## CIRCUIT COURT OF FAIRFAX COUNTY

Harold Frank
and Leslie Frank

v.

Tipco Homes, Inc.

April 16, 1990

Case No. (Law) 94415

By JUDGE JOHANNA L. FITZPATRICK

Plaintiffs seek to exercise their statutory right to void a Contract to Purchase Real Property. Oral argument on plaintiffs' Motion for Summary Judgment was heard on March 23, 1990. For the reasons stated below, summary judgment is granted.

On January 19, 1989, Mr. and Mrs. Frank signed a standard contract to buy a lot on which Tipco Homes, Inc. ("Tipco") was to build a house. They paid a $20,000.00 "Deposit" along with $8,475.00 for "Extras." For various reasons, no closing was ever held on this property. The Franks have sued to get their $28,475.00 back, claiming that the contract is voidable at their option pursuant to § 11-2.3 of the Va. Code. That section provides that:

> Contracts made on and after July 1, 1977, for the sale of improved residential real estate *which do not require completed performance within two years from the date of execution of the contract* shall be voidable at the option of the buyer unless such contract shall be (i) in such form as to be capable of being admitted to record under the provisions of Chapter 6 (§ 55-106 *et seq.*) of Title 55 of the Code

of Virginia; (ii) made in duplicate and a copy capable of being admitted to record furnished to the buyer; and (iii) contain the following statement:

"This contract must be recorded in the general index of the clerk's office of the circuit court of [          ] (city of county in which land is located) in order to protect the buyer from claims of subsequent purchasers of, or other persons obtaining an interest in, this real estate, or claims of judgment creditors, if any, of the seller."

The term "improved real estate" shall be deemed to include any land within a subdivision, a plat of which subdivision has been recorded pursuant to Article 7 (§ 15.1-465 *et seq.*) of Chapter 11 of Title 15.1 or prior statutory authority. (Emphasis added.)

Tipco has admitted in its Answer to the genuineness of the contract in question. It is undisputed that the contract was made after July 1, 1977, and is for the sale of improved residential real estate.

Tipco begins its argument with two reasons why the statute should not be applied in this case. First, Tipco contends that the provision was adopted: (1) "to protect the interests of institutional lenders from unrecorded 'assumptions' " and (2) "to protect the interests of purchasers under contracts for deed and/or land contracts" and was "*not* intended to apply to the usual transaction." Tipco then warns that most, if not all, contracts currently in force will be rendered voidable if this provision is enforced in this case.

There is nothing in the language chosen by the legislature to support the restrictive interpretation offered by Tipco, and there is no basis to effectively amend the statute through creative "interpretation." If the result of applying this statute to "the usual transaction" differs from that intended by the legislature then the law may be amended in due course. The issue for *judicial* resolution is whether the contract "require[s] completed performance within two years from the date of execution" as provided by the clear language of the statute. If not, then the

contract is voidable at the Franks' option because, as both parties agree, none of the statute's recordation requirements are satisfied.

On this point, Tipco explains that the contract contains various provisions which give both parties the right to terminate the contract if certain conditions are (or are not) met. When applied together with the time limits established in other provisions, Tipco claims that the contract must in all events terminate by its own terms within a certain number of days after execution, hence completed performance is required within two years, and the contract is not voidable. The Franks respond that these termination provisions could theoretically be extended indefinitely by their own terms so there is no fixed two-year cut-off. Because there are no reported cases interpreting the statute in question, the Court will explore these assorted contract provisions in some detail.

Under Paragraph 3, the purchaser (here, the Franks) must make a full, complete, and accurate written loan application for the mortgage within seven days of the date of contract execution. If no written mortgage commitment is received within forty-five days of execution, the seller has the option of terminating the contract (Paragraph 4), as discussed in more detail below.

For its part, the seller (here, Tipco) need not commence improvements to the real property until the written mortgage commitment is obtained by the purchaser (Paragraph 4), but the seller is generally obligated to substantially complete construction within 270 days from the date of a written mortgage commitment (Paragraph 12). The purchaser is then required to make full settlement within seven days after notice from the seller that the improvements to the subject real property are substantially complete (Paragraph 13). Applying all these provisions together, the typical contract will expire no later than 312 days after execution (45 + 270 + 7), well short of the two years required by statute.

The Franks counter that these time deadlines may be extended under certain circumstances. For instance, Paragraph 12 provides that the 270-day clock for completing substantial improvements will be tolled as a result of:

(1) any legal action required to perfect title under Paragraph 7 or

(2) any circumstances beyond the seller's control as defined in Paragraph 11. These include:

(a) local, state, or Federal actions concerned with sanitary sewer, septic system, private or public water supplies, storm water management, availability of utilities, pollution controls, or other environmental matters, or

(b) delays occasioned by fire, strike, materials shortages, severe weather conditions, acts of God, or other circumstances beyond the seller's control.

The overall deadline may also be extended at the seller's option to allow the purchaser additional time to secure a mortgage commitment. Specifically, Paragraph 4 provides that if no written mortgage commitment is obtained within forty-five days after execution, the seller has three options:

(1) It may extend the forty-five-day period by a specified period by giving the purchaser written permission to proceed with due diligence to obtain the mortgage from other sources;

(2) It may terminate the contract by refunding the deposit; or

(3) If the purchaser's inability to obtain the mortgage has been due in any way to a change, omission, or misrepresentation in the loan application, the seller may elect either:

(a) to hold the deposit and pursue legal remedies; or

(b) to keep the deposit as liquidated damages and terminate the contract.

Viewing all these timing provisions together, the Franks claim that this contract simply does not "require" termination within two years, so it is within § 11-2.3 and is voidable at the buyer's option.

The foregoing analysis is simply not responsive to the statute's requirements. The statute does not apply to contracts which "will not terminate within two years

. . ." it applies to contracts which "require completed performance within two years." If the contract is terminated under most of Tipco's various scenarios, it must be because at least one party failed to perform. "Termination due to nonperformance" is imply not the same thing as "completed performance."

The term "completed performance" will instead be taken to mean "performed completely," i.e., full satisfaction of both sides' contractual obligations. Re-reading the contract in this light, the question becomes whether both parties are required to completely perform their respective obligations within two years. To answer this question, each party's obligations must first be determined.

Tipco has the following broad obligations under the contract:

(1) to substantially complete all improvements to the real property, generally within 270 days of receipt of a written mortgage commitment (Paragraph 12).

(a) substantial completion is expressly satisfied upon receipt of a residential use (occupancy) permit from that governmental agency having jurisdiction thereof (Paragraph 13).

(2) to deliver proper title to the property at settlement by way of the usual general warranty deed (Paragraphs 7 and 8).

(3) to deliver possession at the time of settlement (Paragraph 8).

(4) to provide a termite certificate at settlement; and

(5) to pay the settlement attorney's fees, together with the sales commission provided in Paragraph 24, the state grantor's tax, all fees necessary to release existing encumbrances, and up to two discount points.

The Franks for their part must:

(1) make a full, complete, and accurate written loan application for the mortgage within seven days of contract execution (Paragraph 3).

(2) promptly provide the lender such additional information as may be requested by it from time to time in order to complete the application processing (Paragraph 3).

(3) receive a written mortgage commitment within

forty-five days of execution (or longer, with seller's permission) (Paragraph 4).

(4) pay the assessments established by a Homeowners' Association, if any (Paragraph 19).

(5) pay for all costs of settlement and financing, including purchaser's attorney fees, title examination, title insurance, transfer taxes, notary fees, survey, recording charges, lender inspection fees, appraisal fees, private mortgage insurance fees, prepaid items, escrows, loan origination fees, discount fees above those agreed to be paid by the seller, and all other charges assessed by the lender to any party (Paragraph 23).

(6) purchase the house, customer extras, lot, improvements thereon, and appurtenances thereto for an agreed total purchase price (Paragraph 2).

(a) As noted earlier, full settlement must take place within seven days after notice from the seller that improvements to the subject real property are substantially complete (Paragraph 13).

Having now defined each party's obligations, the question becomes whether the contract requires these obligations to be completely performed within two years of execution. "Completed performance" of Tipco's obligations is expressly defined in Paragraph 10 to occur when the Purchaser accepts delivery of the deed at the time of the closing of title. There is no comparable provision expressly defining what constitutes "completed performance" on the purchaser's part, but it can be readily concluded that timely payment of all the specified items would fully satisfy all the Franks' obligations under the contract and thus constitute complete performance for purposes of the statute.

Settlement is thus seen as the pivotal moment when both parties will have completely performed their respective obligations. Nowhere is there any affirmative requirement that settlement take place within two years of execution. Nor is there any requirement that a certificate of occupancy be issued within one year and fifty-one weeks from the date of execution, thus "requiring" settlement within two years. No matter what approach is taken, there is no construction of this contract whereby completed performance *must* occur within two years. The contract therefore falls within § 11-2.3 and is voidable at the buyer's option.

Beyond this, none of the contract's provisions actually "require" termination. Without reprinting every pertinent provision, it may fairly be stated that every clause addressing termination gives one party or the other the option or the right to terminate. Termination is thus authorized but is nowhere required. Tipco's interpretation of the contract amounts at best to an observation that most contracts will probably be completely performed within two years or will be terminated at one party's option within two years. This may be true, but it does not mean that completed performance within two years is required.

In sum, there is no language in this contract which affirmatively obligates either party to fully "perform" within two years of execution. Nor is termination within two years in any way "required." The contract must accordingly satisfy § 11-2.3's recording requirements. Since it does not, the contract is voidable at the buyer's option.